IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BILLY CORTEZ COSBY,<br><br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:07-CR-54 TC |

Defendant Billy Cortez Cosby has been indicted on possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and possessing a firearm in violation of 26 U.S.C. § 5861(d). Mr. Cosby filed a motion to suppress the evidence that the government obtained during a warrantless search of his apartment.

For the reasons set forth below, the court finds that Aliscia Cosby, Mr. Cosby's wife, voluntarily consented to the search of the apartment she shared with Mr. Cosby. See United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007). Accordingly, because Aliscia Cosby's third-party consent was valid, Mr. Cosby's motion to suppress is DENIED.

**FINDINGS OF FACT**[1]

Mr. Cosby's motion to suppress arose from a Salt Lake City Police robbery investigation, which occurred in a hotel room in the northwestern part of Salt Lake City on June 4, 2005. Detective Bryan C. Johnson led the investigation. He has been a peace officer for twenty-three

---

[1] The facts are taken from the transcript of an evidentiary hearing held on May 1, 2007 ("Tr.").

years and is assigned full-time to the F.B.I. to work in its robbery task force.

The robbery investigation was based on a report by a professional escort who claimed that she was taken to a hotel and robbed. The escort alleged that she was then taken to her apartment where she was robbed again. Detective Johnson discovered that Mr. Cosby's name appeared on the hotel room's registry. At about 6:00 a.m., approximately four hours after the robbery, Detective Johnson contacted the Murray City police and asked them to locate and detain Mr. Cosby at his home in Murray, Utah.

Murray City Police Officer Heber Smith and another officer went looking for Mr. Cosby. They spoke with a woman who identified herself as Mr. Cosby's mother-in-law. She told the officers that her daughter—Aliscia—and Mr. Cosby lived at the Ponderosa Apartments in Murray, Utah. Officer Smith found Aliscia's name and residence in a computer database.

Around 6:30 a.m., Officer Smith and Officer Argueta arrived at the apartment and knocked on the door. Mr. Cosby opened and stood in the doorway with his wife, Aliscia. Officer Smith asked Mr. Cosby for identification and explained to him that the "Salt Lake City police department needed to speak with him about an incident that occurred in their city." (Tr. 25.) Officer Smith testified that "they both appeared to be awake, and I kind of got the impression that Billy had just barely got home or recently had gotten home." (Id.) Officer Smith asked Mr. Cosby if they could come inside the apartment, and Mr. Cosby agreed. Officer Smith testified that he radioed police dispatch to let Detective Johnson know that he had located Mr. Cosby. According to Officer Smith, they all waited about "20 minutes or so" and just made "small talk" as they waited for Detective Johnson to arrive. (Id. at 29, 31.)

Once he arrived, Detective Johnson interviewed Mr. Cosby and asked him if he had rented the hotel room. Mr. Cosby admitted that he had. Detective Johnson asked Mr. Cosby if

he could search the hotel room and Mr. Cosby told him yes.  Detective Johnson asked him to fill out a consent to search form that authorized him to search the hotel room.  Detective Johnson testified that he was concerned with "[g]aining access to the motel room because it had not ever been searched.  We thought there might be evidence and/or even possibly a suspect there."  (Id.)

Because it had only been about four hours since the robbery, the hotel registration that led to Mr. Cosby was still in effect.  Detective Johnson handcuffed Mr. Cosby and put him in his car.  Officer Smith followed Detective Johnson to his car and asked him if he could help further in the investigation.  Detective Johnson, who was preparing to leave the scene, told Officer Smith to ask Mrs. Cosby "if she'll allow you a consent search" and, if permitted, to "go ahead and do a consent search."  (Id. at 9.)  According to Officer Smith, Detective Johnson "explained to me that he needed to get Mr. Cosby back downtown so some people could speak to him, [and] some other detectives could speak to him, concerning the robbery."  (Id. at 31.)  Detective Johnson testified that it was his intent to "get back and see if there was any other evidence that could be reserved after the S.W.A.T. entry."  (Id. at 19.)  By this time, Officer Argueta had left and Officer Stone had arrived.  Mrs. Cosby was still in her apartment.

After Detective Johnson left, Officer Smith and Officer Stone approached the apartment.  They knocked and asked Mrs. Cosby whether they could step inside to speak with her.  Officer Stone testified that "she gave us permission to come in."  (Id. at 40.)  Officer Stone also testified that "[w]e asked if there was any—any weapons inside the house, and she said no, and if there was, that she did not know about them."  (Id.)

Officer Smith "explained to her [Mrs. Cosby] that she was now aware that Billy was being taken downtown for an investigation of a robbery" and asked her "if she would mind if we looked around the apartment" for any evidence, specifically a gun or money.  (Id. at 32.)  Mrs.

Cosby responded yes, without hesitation. (Id.) He also explained to her that if she "did not want us to look, that she didn't have to give us consent, and we would go ahead and leave. And at anytime during the search if she wanted us to stop, we could—we would automatically stop and walk out of the apartment and that would be it." (Id. at 33.)

Mrs. Cosby asked the officers not to go in her stepson's bedroom, where he was sleeping, and they agreed. (Id. at 34.) Officer Stone, Officer Smith, and Mrs. Cosby then went to the back bedroom. Officer Stone searched under the bed. He then searched the mattress and found a gun that looked like it had been "sawed-off" underneath it. (Id. at 42-43.) Officer Smith testified that he thought Mrs. Cosby was "shocked" that they found a gun. (Id. at 36.)

Officer Smith called Detective Johnson and told him that they had found a gun and Detective Johnson immediately returned to the apartment. Detective Johnson entered the apartment and asked Mrs. Cosby if it was okay for him to be there and she replied yes and showed him the gun.

## CONCLUSIONS OF LAW

**I.      Warrantless Search of Mr. Cosby's Apartment**

Subject to limited established exceptions, the Fourth Amendment prohibits warrantless searches of an individual's home or possessions. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). But consent to search is one of these exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent must be voluntary and obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. Rodriguez, 497 U.S. at 181; United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007) (stating that voluntary consent, given by the individual or by a third party with authority over the subject property, is a well-established exception to the warrant requirement).

The Tenth Circuit held that valid third party consent can arise either through the third party's actual authority or the third party's apparent authority. Andrus, 483 F.3d at 716. "A third party has actual authority to consent to a search 'if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes.'" Id. (citation omitted). In United States v. Matlock, the Court held that "common authority over or other sufficient relationship to the premises or effects sought to be inspected" may give rise to a third party's valid consent to search. United States v. Matlock, 415 U.S. 164, 171 (1974). Even where actual authority is lacking, however, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes that the third party possesses authority to consent. Andrus, 483 F.3d at 716. The government bears the burden of proving "that the consenter had mutual use of the property searched by virtue of her joint access to it, or control for most purposes over it." Rodriguez, 497 U.S. at 181; United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir. 1990).

Moreover, husband-wife relationships give rise to a presumption of control for most purposes over property. United States v. Rith, 164 F.3d 1323, 1330-31 (10th Cir. 1999) (stating that the presumption may be rebutted by facts showing an agreement or understanding between the defendant and third party that the latter must have permission to enter the defendant's room).

**A.   Third-Party Consent**

Aliscia Cosby lived in the Ponderosa Apartment with her husband, Mr. Cosby. Clearly she had authority to allow officers to enter and search her residence, even though she was not the subject of the search. See Matlock, 415 U.S. at 171.

In United States v. Matlock, the Court held that mutual use of property carries with it the risk that just one of the occupants might permit a search of the common area. Matlock, 415 U.S.

at 172 n.7.  In applying <u>Matlock</u>, the Tenth Circuit stated that "[i]f common authority is established, the person whose property is searched is unjustified in claiming an expectation of privacy in the property because that person cannot reasonably believe that the joint user will not, under certain circumstances, allow a search in her own right."  <u>United States v. McAlpine</u>, 919 F.2d 1461, 1463 (10th Cir. 1990).

Moreover, there is nothing in the record that supports that Mrs. Cosby's consent was the product of official threats, pressure, intimidation, or harassment.  In fact, the record clearly supports that her consent was voluntary.

But in his motion to suppress, Mr. Cosby argues that Detective Johnson removed him from his residence to prevent him from objecting to the search.  (Def.'s Mem. Supp. 5.)  In support, Mr. Cosby relies on <u>Georgia v. Randolph</u>, 547 U.S. 103 (2006).  In <u>Randolph</u>, the defendant moved to suppress evidence discovered during a search of a marital residence based on his wife's consent.  The Court held that officers could not search a house pursuant to third-party consent over a suspect's objections but narrowed the opinion to apply only where the suspect is physically present and objects.  <u>See id.</u>  <u>Randolph</u> requires an express objection by a present co-tenant.

In <u>United States v. McKerrell</u>, the court held that police officers did not violate the defendant's Fourth Amendment rights by searching his house pursuant to his wife's consent after the defendant was arrested at the house and transported to the police station.  <u>United States v. McKerrell</u>, No. 06-5209, 2007 WL 1936690, *6 (10th Cir. July 5, 2007).  The court noted that the defendant did not expressly object to a search of the house while he was on the scene, and there was no showing that the officers removed the defendant from the scene to avoid his possible objection to the search.  <u>Id.</u>  The Tenth Circuit stated that "[t]he Court in <u>Randolph</u>

admitted that it was drawing a fine line by requiring the defendant to be at the scene and to expressly refuse to consent, but the Court reaffirmed that this is the line it drew when it stated that a search is constitutional even if the potential objector is nearby and not invited to take part in the threshold colloquy." Id. at *4.

Mr. Cosby points out that Detective Johnson's and Officer Smith's had inconsistent memories about why Detective Johnson left the residence with Mr. Cosby.  According to Officer Smith, Detective Johnson "explained to me that he needed to get Mr. Cosby back downtown so some people could speak to him, [and] some other detectives could speak to him, concerning the robbery." (Tr. 31.)  Further, Detective Johnson testified that it was his intent to "get back and see if there was any other evidence that could be reserved after the S.W.A.T. entry." (Id. at 19.)  Mr. Cosby finds it significant that Officer Smith testified that he was "kind of confused why he [Detective Johnson] just was in such a hurry to get Mr. Cosby downtown." (Id. at 30.)

But both Detective Johnson and Officer Smith testified that Detective Johnson left to continue the robbery investigation.  There is no evidence to support Mr. Cosby's theory that Detective Johnson took Mr. Cosby out of the residence so that Mr. Cosby could not object to the search.  Detective Johnson testified that he did not purposefully exclude Mr. Cosby from the discussion about consent to search the residence. (Id. at 18.)  Moreover, there is no evidence to support that Mr. Cosby objected to a search of his residence before he was placed in the police car or that he would have objected had he been present.  For these reasons, Mr. Cosby's reliance on Randolph is misplaced.

**ORDER**

For the foregoing reasons, the court orders as follows:

Defendant Billy Cortez Cosby's Motion to Suppress (Dkt # 15) is DENIED.

DATED this 7th day of August, 2007.

                            BY THE COURT:

                            *[signature: Tena Campbell]*

                            TENA CAMPBELL
                            Chief Judge